UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN EDUARDO VALDEZ-NUNEZ alias Edwin Garcia, alias Eduardo Valdez, alias Miguel Antonio Morillo, alias Alan Medeiros, alias Juan Bravo, alias Renato Nunez Heredia, alias Victor Perez Garcia, aka "Canita," aka "Cabezon," aka "Tony,"<br><br>Defendant. | CR No. 17 – 037M |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) and (C) of the Federal Rules of Criminal Procedure, the United States and Defendant, JUAN EDUARDO VALDEZ-NUNEZ, have reached the following agreement:

1.  Defendant's Obligations.

    a. Defendant will plead guilty to a two count Indictment which charges Defendant with conspiracy to distribute a kilogram or more of heroin, cocaine, cocaine base and fentanyl and illegal reentry after deportation all in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; 8 U.S.C. §§ 1326(a) and (b)(2).

1

DC
JEV

b. Defendant agrees that the time between the filing of this plea agreement and the scheduled date for the change of plea is excludable under the Speedy Trial Act, 18 U.S.C. § 3161.

c. Defendant will recommend that the Court impose a term of 20 years of imprisonment.

d. Defendant agrees to forfeit all interest in $8598 in United States Currency lawfully seized from his residence in Milton, MA; $1465 in cash seized at 103/105 Woodbine Street in Cranston, RI on April 11, 2017; and $349,545 in cash seized at 103/105 Woodbine Street in Cranston, RI on April 10, 2018. All of which money represents the proceeds of drug trafficking and is in the possession of the Federal Bureau of Investigation.

e. Defendant further agrees, as requested by the United States:

(i) to identify all assets over which Defendant exercises or exercised control, directly or indirectly, within the past two years, or in which Defendant has or had during that time any financial interest. To obtain from any other parties by any lawful means any records of assets owned at any time by Defendant. To provide and/or consent to the release of Defendant's tax returns for the previous five years. To forfeit to the United States all of Defendant's interests in any asset of a value of more than $1000 that, within the last two years, Defendant owned, or in which Defendant maintained an

DC
JEV

interest, the ownership of which Defendant fails to disclose to the United States in accordance with this agreement.

(ii) Defendant agrees to hold the United States, its agents, and its employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property covered by this agreement.

(iii) to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

(iv) to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct.

(v) to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant also understands and agrees that by virtue of his/her plea of guilty he/she waives any rights or cause of action to claim

that he/she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

2. Government's Obligations. In exchange for Defendant's ~~waiver of Indictment and~~ plea of guilty:

    a. The government will recommend that the Court impose a term of 20 years of imprisonment.

    b. For purposes of determining the offense level, the government agrees to recommend a two-level reduction in the offense level for acceptance of responsibility under § 3E1.1(a) of the guidelines if Defendant continues to demonstrate acceptance of responsibility through sentencing.

    c. As of the date of this agreement, Defendant has timely notified authorities of an intention to enter a plea of guilty. If the offense level is 16 or greater and Defendant enters a plea of guilty pursuant to this agreement, the government will move the sentencing Court for an additional decrease of one level, pursuant to U.S.S.G. § 3E1.1(b)(2), unless Defendant indicates an intention not to enter a plea of guilty, thereby requiring the government to prepare for trial.

    d. The government is free to recommend any combination of supervised release, fines, and restitution which it deems appropriate.

DC
JEV

e. If Defendant pleads guilty and abides by all the terms of this plea agreement, the government will not file for an enhanced sentence under 21 U.S.C. § 851. Defendant understands that enhancement would expose Defendant to a mandatory life sentence.

3. Binding Plea.

a. The parties understand that if this plea agreement is accepted by the Court, the Court will impose a term of 20 years of imprisonment.

b. The Defendant is aware that his sentence is within the sound discretion of the Court. The Defendant further understands that under Rule 11(c)(1)(C), the Court may accept or reject the plea agreement, or may defer its decision as to its acceptance or rejection until it has considered the presentence report. If the Court rejects the plea agreement, the Court shall, on the record, inform the parties of this fact, and afford the Defendant an opportunity to withdraw the guilty plea, and advise the Defendant that if the Defendant persists in a guilty plea, the disposition of the case may be less favorable to the Defendant than that contemplated in the plea agreement. In addition, as part of the terms and conditions of this plea agreement, the parties agree that should the Court reject the plea agreement, the United States reserves its right to withdraw from its obligations under the same.

DC
JEV

4. Defendant understands that if the Court rejects this binding Plea Agreement and defendant elects to proceed under the sentencing guidelines, the guidelines are not binding on the Court. Although the Court must consult the guidelines in fashioning any sentence in this case, the guidelines are only advisory, and the Court may impose any reasonable sentence in this matter up to the statutory maximum penalties after taking into account the factors enumerated in 18 U.S.C. § 3553(a).

5. The United States and Defendant stipulate and agree that:

- Defendant, along with his brothers Claudio Valdez and Hector Valdez, were leaders and organizers of a drug trafficking organization hereinafter referred to as "The Valdez DTO."

- In the course of this conspiracy, Defendant and his brothers conspired, agreed, combined and worked collaboratively together to obtain and distribute more than a kilogram of heroin and other amounts of fentanyl, cocaine, cocaine base and opioids in pill form with other coconspirators and accomplices charged and uncharged who were operating in concert with them as The Valdez DTO and the government could have proven that the conspiracy involved more than a kilogram of heroin beyond a reasonable doubt.

- In the course of this conspiracy, The Valdez DTO used apartments in Woonsocket and Cranston as drug stash houses where drugs were processed, cut and packaged for redistribution.

6

DC
JEV

- In the course of this conspiracy, The Valdez DTO obtained an apartment and used Juan Bautista Arias to work for them selling heroin, fentanyl and crack cocaine at a drug distribution point in Hartford, Connecticut.

- In the course of this conspiracy, The Valdez DTO used Tanya Croteau as a courier to transport drugs and money to: Juan Bautista Arias in Hartford, Connecticut and; to other drug customers in Rhode Island and Massachusetts who were buying controlled substances from The Valdez DTO, including a drug customer known as *The Cousin* in Boston who was a costumer of Alexandra Garcia.

- In the course of this conspiracy, The Valdez DTO used Vladamir Ernesto Arias Nova to deliver drugs and money to and from an uncharged drug source in the Dominican Republic known as *The Maestro*.

- In the course of this conspiracy, The Valdez DTO used other sources of supply for heroin and cocaine including Manuel Castillo, Esther Franco and uncharged drug sources known as *The Doctor* and *The Mexican*.

- In the course of this conspiracy, Defendant, his brothers, and Tanya Croteau personally delivered cocaine, crack cocaine, heroin, heroin containing fentanyl and fentanyl to a *cooperating source* for which they were paid a total of $43,670.

- In the course of this conspiracy, The Valdez DTO supplied other drug customers in Rhode Island and Massachusetts, with distributable amounts of heroin, cocaine, cocaine base and fentanyl, including Ramon Guzman, Jafar Munir, Luis Pellot, and Wandy Diaz, as well as two as yet to be

7

positively identified individuals, Jesus Delgado Sierra, aka "Carlito" and Edgardo Romero, aka "Jovan."

- In the course of this investigation, controlled substances totaling more than 2 kilograms of heroin (some of which contained fentanyl), over 1.5 kilograms of cocaine, as well as hundreds of grams of cocaine base and fentanyl, were purchased or seized; all of which was attributable to the conspiracy and the Valdez DTO and all of which was reasonably foreseeable to Defendant.

- Defendant has been previously deported from the United States on four occasions and has not received permission to reenter the country.

6. Except as expressly provided in the preceding paragraphs, there is no agreement as to which Offense Level and Criminal History Category applies in this case. Both the United States and Defendant reserve their rights to argue and present evidence on all matters affecting the guidelines calculation.

7. The maximum statutory penalties for the offenses to which Defendant is pleading guilty are:

Count 1:
    10 years to life imprisonment; a fine of $10,000,000; a term of supervised release for life; and a mandatory special assessment of $100.

Count 2:
    20 years of imprisonment; a fine of $250,000; a term of supervised release of 3 years and a mandatory special assessment of $100.



Defendant understands that if the court were to impose the sentences consecutively he could be sentenced to more than life imprisonment; a fine of $10,250,000; a term of supervised release for life; and a mandatory special assessment of $200. Defendant further understands that the statutory penalty for Count 1 carries a minimum mandatory period of imprisonment for 10 years and the Court could not sentence Defendant to less than that length of time in prison but that, if the court accepts this binding plea agreement, he will be sentenced to 20 years of imprisonment.

8. Defendant agrees that, after Defendant and Defendant's counsel sign this plea agreement, counsel will return it to the United States Attorney's Office along with a money order or certified check, payable to the Clerk, United States District Court, in payment of the special assessment. Failure to do so, unless the Court has made a previous finding of indigence, will relieve the government of its obligation to recommend a reduction in the offense level under the guidelines for acceptance of responsibility.

9. Defendant is advised and understands that:

a. The government has the right, in a prosecution for perjury or making a false statement, to use against Defendant any statement that Defendant gives under oath;

b. Defendant has the right to plead not guilty, or having already so pleaded, to persist in that plea;

c. Defendant has the right to a jury trial;

9

DC
JEV

      d. Defendant has the right to be represented by counsel – and if necessary have the Court appoint counsel – at trial and every other stage of the proceeding;

      e. Defendant has the right at trial to confront and cross-examine adverse witnesses, to be protected from self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

      f. Defendant waives these trial rights if the Court accepts a plea of guilty.

      g. Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable or deportable offenses including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to a drug trafficking offense, removal is presumptively mandatory. Removal, deportation and other immigration consequences are the subject of separate proceedings, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

10.    The government reserves its full right of allocution, including the right to present any information to the Court for its consideration in fashioning an appropriate



sentence, the right to correct misstatements, misrepresentations, or omissions by Defendant, and to answer any questions asked by the Court.

11. Except for paragraphs 2 and 5, the parties have made no agreement concerning the application of the guidelines in this case.

12. Defendant understands that the Court alone makes all sentencing decisions, including the application of the guidelines and the sentence to be imposed. Defendant also understands that if the Court rejects the binding Plea Agreement and Defendant elects to persist in his plea of guilty after being advised that the sentence may be less favorable to Defendant than that contemplated by the binding agreement (as provided in paragraph 3) then, even if the Court's guideline determinations and sentence are different than Defendant expects, Defendant will not be allowed to withdraw Defendant's plea of guilty. The Court would not bound by the parties' stipulations of fact, offense level adjustments, or the joint recommendations. The Court would also be free to impose any sentence it deems appropriate up to and including the statutory maximum.

13. Defendant hereby waives Defendant's right to appeal the conviction and sentence imposed by the Court, if the sentence is a term of imprisonment of 20 years. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the government retains its right to appeal any of the Court's sentencing determinations.

DC
JEV

14. This agreement is binding on the government only if Defendant pleads guilty, fulfills all Defendant's obligations under the agreement, does not engage in any conduct constituting obstruction of justice under § 3C1.1 of the guidelines, and does not commit any new offenses. Defendant understands that if Defendant violates this agreement in any way, the government shall be released from its obligations under the agreement and will be free to make any recommendations that it deems appropriate. If that occurs, Defendant shall not have the right to withdraw Defendant's guilty plea.

15. This agreement is limited to the District of Rhode Island and does not bind any other federal, state, or local prosecutive authorities.

16. This agreement constitutes the entire agreement between the parties. No other promises or inducements have been made concerning the plea in this case. Defendant acknowledges that no person has, directly or indirectly, threatened or coerced Defendant to enter this agreement. Any additions, deletions, or modifications to this agreement must be made in writing and signed by all the parties in order to be effective.

17. Counsel for Defendant states that Counsel has read this agreement, been given a copy of it for Counsel's file, explained it to Defendant, and states that to the best of Counsel's knowledge and belief, Defendant understands the agreement.

DC
JEV

18. Defendant states that Defendant has read the agreement or has had it read to Defendant, has discussed it with Defendant's Counsel, understands it, and agrees to its provisions.

_____
JUAN EDUARDO VALDEZ-NUNEZ
Defendant

Date 5/22/18

_____
DANIEL CALABRO, ESQ.
Counsel for Defendant

Sean R. Doherty, Esq.

Date 5/22/18

5/22/18

_____
GERARD B. SULLIVAN
Assistant U.S. Attorney

Date May 24, 2018

_____
for WILLIAM J. FERLAND
Assistant U.S. Attorney
Chief, Criminal Division

Date May 24, 2018

I hereby certify that I truly and accurately translated the above plea agreement for Juan Valdez on May 22, 2018 in the presence of his Attorney and Defendant aknowledged that he understood all of the provisions of the agreement.

_____
Rosanna Mejia
Name of Interpreter
(Print)

13

_____
Signature