UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____

UNITED STATES                    )
                                 )
           v.                    )        Cr. No. 17-037-JJM-LDA
                                 )
JUAN VALDEZ,                     )
           Defendant.            )
_____  )

## MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., Chief United States District Judge

Juan Valdez has petitioned this Court under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, entered after he pled guilty to one count of conspiracy to distribute heroin, fentanyl, cocaine, and cocaine base, and one count of illegal reentry. He now claims that the Court should vacate his sentence because he received ineffective assistance of counsel. The Court has determined that no hearing is necessary.[1] The Court finds that Mr. Valdez's Motion to Vacate (ECF No. 279) lacks merit and thus DENIES his petition.

---

[1] "A prisoner who invokes section 2255 is not entitled to an evidentiary hearing as a matter of right." *David v. United States*, 134 F.3d 470, 477 (1st Cir. 1998) (citing *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993)). In his reply memorandum (ECF No. 295), Mr. Valdez "maintains he is entitled to a hearing to expand the record allowing the Court to examine the new evidence and determine if the ineffective assistance amounts to a Sixth Amendment and due process violations." Reply at 11-12. However, he provides no new evidence in the Reply but, rather, simply rehashes his previous arguments. *See generally id.*; *see also Mack v. United States*, 635 F.2d 20, 27 (1st Cir. 1980) ("A hearing is not necessary when a § 2255 motion (1) is inadequate on its face, or [(2)] although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case.") (internal quotation marks omitted). Further, "if [petitioner's] claim is based upon facts with which the trial

FACTS

Following a lengthy investigation by multiple agencies into drug trafficking in Rhode Island, Massachusetts, and Connecticut, Mr. Valdez was arrested pursuant to a Complaint filed in this Court.  A grand jury sitting in the District of Rhode Island subsequently indicted Mr. Valdez, among others, on one count of conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin and other amounts of fentanyl, cocaine, and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 1); and one count of illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2) (Count 2).  Mr. Valdez pled  guilty, pursuant to a written plea agreement, to both charges.  The Court sentenced him to a total of 240 months imprisonment, followed by supervised release for five years.

Mr. Valdez appealed.  Appellate counsel filed an *Anders*[2] brief and moved to withdraw, which the First Circuit granted.  The First Circuit also enforced the appeal waiver contained in the plea agreement and dismissed the appeal.  Mr. Valdez did not seek further review.

Mr. Valdez timely filed this Motion to Vacate.

---

court, through review of the record or observation at trial, is familiar, the court may make findings without an additional hearing . . . ." *Barrett v. United States*, 965 F.2d 1184, 1186 (1st Cir. 1992) (alteration in original) (internal quotation marks omitted).

[2] *Anders v. California*, 386 U.S. 738 (1967).

LAW

    A.    Section 2255

Section 2255 provides for post-conviction relief only if the court sentenced a petitioner in violation of the Constitution or lacked jurisdiction to impose the sentence, if the sentence exceeded the statutory maximum, or if the sentence is otherwise subject to collateral attack. *United States v. Addonizio*, 422 U.S. 178, 185 (1979); *David*, 134 F.3d at 474. In trying to collaterally attack his sentence, the petitioner bears the burden of proving "exceptional circumstances" that warrant redress under § 2255. *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980). For example, an error of law must constitute a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. at 428.

    B.    *Strickland*

The Sixth Amendment guarantees defendants the right to effective assistance of counsel. *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). That said, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991).

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must prove:

(1)    that his counsel's performance fell below an objective standard of reasonableness; and

(2)    a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Strickland*, 466 U.S. at 687-88; *United States v. Manon*, 608 F.3d 126, 131 (1st Cir. 2010).   In assessing the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'"  *Manon*, 608 F.3d at 131 (quoting *Strickland*, 466 U.S. at 690).   As for the second prong, or the prejudice requirement under *Strickland*, a "reasonable probability is one sufficient to undermine confidence in the outcome.   In making the prejudice assessment, [the court] focus[es] on the fundamental fairness of the proceeding."  *Id.* (internal citation omitted).  Unless the petitioner makes both showings, the court cannot say that the conviction resulted from a "breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687; *see also Reyes-Vejerano v. United States*, 117 F. Supp. 2d 103, 106 (D. P.R. 2000) ("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one.").  In sum, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper

functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

*Strickland* instructs, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Finally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

The same principles apply in the context of guilty pleas. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *see also United States v. Marquez-Perez*, 835 F.3d 153, 165 (1st Cir. 2016) ("The Sixth Amendment right to counsel entitles a defendant to effective counsel during plea negotiations." (citing *Missouri v Frye*, 566 U.S. 134, 144 (2012))). The Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. at 58; *see also Padilla v. Kentucky*, 559 U.S. 356, 371 n.12 (2010) ("In *Hill*, the Court recognized—for the first time—that *Strickland* applies to

advice respecting a guilty plea."). The first prong of the *Strickland* test is nothing more than a restatement of the standard of attorney competence described above. *Hill v. Lockhart*, 474 U.S. at 58. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citing *Frye*, 566 U.S. at148); *see also Frye*, 566 U.S. at 147 ("To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."). The Court reiterated that, as stated in *Strickland*, "these predictions of the outcome at a possible trial, where necessary, should be made objectively . . . ." *Hill v. Lockhart*, 474 U.S. at 59-60.

## ANALYSIS

As noted above, Mr. Valdez timely filed the Motion to Vacate (ECF No. 279). The Government then filed a response in opposition to the motion (ECF No. 283), and Mr. Valdez subsequently filed a reply (ECF No. 295).

Mr. Valdez alleges that counsel were ineffective on four overlapping grounds. Mot. to Vacate at 4-8.[3] First, Mr. Valdez contends that counsel rendered ineffective assistance for inducing him to accept a plea that was not knowing and voluntary. *Id.*

---

[3] Page numbers refer to the pagination generated by the Court's electronic case filing system ("ECF").

at 4.[4]    Second, he argues that counsel were ineffective "for failure to contest petitioner['s] prior(s) which were adjudged as crime[s] of violence increasing the base offense level and Criminal History Points in error." *Id.* at 5.  Third, Mr. Valdez alleges that counsel were ineffective for failing to contest the amount of drugs determined by the probation office, which he claims was not accurate.  *Id.* at 6.  Fourth, he asserts that counsel rendered ineffective assistance by inducing him to accept a plea agreement for a specific amount of time when he understood that his sentence would be lower. *Id.* at 8.

In addressing Mr. Valdez's individual claims regarding counsel's performance. the Court keeps two principles in mind.  To begin, as noted above, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.  Next, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.  The Court will address each of Mr. Valdez's grounds for relief, albeit in different order.

First, Mr. Valdez argues that counsel rendered ineffective assistance by inducing him to accept a plea which was not knowing and voluntary.  Mot. to Vacate at 4.  The record belies his contention that the plea was unknowing and involuntary.

---

[4] Ground One includes subpoints, several of which overlap with Mr. Valdez's other grounds for relief.  *See* Mot. to Vacate at 4.  They will be addressed primarily in conjunction with Mr. Valdez's other claims.

Mr. Valdez acknowledged in the plea agreement that "no person has, directly or indirectly, threatened or coerced Defendant to enter this agreement." Plea Agreement (ECF No. 111) ("Plea Agrmt.") ¶ 16. He further stated that he "has read the agreement or has had it read to Defendant, has discussed it with Defendant's Counsel, understands it, and agrees to its provisions." *Id.* ¶ 18. Similarly, counsel attested that he had read the agreement, been given a copy of it for his file, "explained it to Defendant, and … that to the best of Counsel's knowledge and belief, Defendant understands the agreement." *Id.* ¶ 17.

During the change of plea hearing, the Court first asked Mr. Valdez, under oath, if he remembered signing the plea agreement. He responded affirmatively. Transcript of July 9, 2018, Change of Plea Hearing (ECF No. 241) (" Plea Hrng. Tr.") at 3. The Court continued:

> THE COURT:      And did you sign that plea agreement after you thoroughly reviewed it with your attorneys?
>
> THE DEFENDANT:      Yes.
>
> THE COURT:      And did you sign that plea agreement voluntarily?
>
> THE DEFENDANT:      Yes.

*Id.* The Court inquired about Mr. Valdez's age, education, drug use, medications and whether any prescription medication he was taking had any effect on his ability to think clearly. *Id.* at 3-5. Mr. Valdez responded: "I don't know, but I am understanding everything." *Id.* at 5. The Court went on with the colloquy:

> THE COURT:      Okay. That's great. I asked you about the plea agreement, Mr. Valdez. Did you also receive a copy of the

Indictment?  That's the written charges that the Government has brought against you in this case.

   THE DEFENDANT:  No.

. . .

   THE DEFENDANT:  I've never received a copy of these.  He read it to me through an interpreter when he came to see me.

   THE COURT:  So did your attorney review the Indictment that the grand jury brought against you with you?  He reviewed that with you?

   THE DEFENDANT:  He did read it to me, but he never gave me or furnished a copy.

   THE COURT:  Okay.  Did he review the meaning of the Indictment and the consequences of that Indictment with you?

   THE DEFENDANT:  What?  I'm not sure I understood that term.

   THE COURT:  Did he review the Indictment with you and tell you what could happen to you because the Government brought this Indictment against you?

   THE DEFENDANT:  Yes.

   THE COURT:  Are you fully satisfied with the representation you've received from your attorneys in this case?

   THE DEFENDANT:  Yes.

*Id.* at 5-7.[5]  The Court proceeded to review with Mr. Valdez the rights he would be

waiving by pleading guilty, which were also spelled out in the plea agreement, *id.*

---

[5]  Several months prior to the change of plea hearing, Mr. Valdez, acting pro se, had filed a generic motion to dismiss his attorneys and appoint new counsel (ECF No. 69), as had several of his co-defendants.  Transcript of February 2, 2018, motion hearing (ECF No. 240) ("Mot. Hrng. Tr.") at 2.  At the hearing on the motion, the Court noted that neither of Mr. Valdez's attorneys had moved to withdraw and stated

at 7-9; *see also* Plea Agrmt. ¶ 9, and the likelihood that he would be deported if he

pled guilty, Plea Hrng. Tr. at 11; *see also* Plea Agrmt. ¶ 9.  After summarizing Mr.

Valdez's trial rights, the Court stated:

> THE COURT:      But if you change your plea to guilty, you're
> going to give up all of these rights that you currently have and there will
> be no trial.  Do you understand that you have these rights and that if
> you change your plea to guilty you'll be giving up these rights?
>
> THE DEFENDANT:      Yes.
>
> THE COURT:      Has anyone attempted in any way to force you
> to plead guilty or otherwise threatened you in any way to get you to
> plead guilty?
>
> THE DEFENDANT:      No.

---

that it assumed neither felt ethically unable to continue to represent Mr. Valdez at
that point.  *Id.* at 3.  Counsel confirmed the Court's assumption, but noted that Mr.
Valdez had told them that he did not want them as his lawyers and would rather
proceed pro se.  *Id.*  Before allowing Mr. Valdez to speak, the Court went off the record
to allow Mr. Valdez to confer with his attorneys.  *Id.* at 5-6.  After conferring, Mr.
Valdez stated that he wanted to reconsider and talk to his family before making a
final decision.  *Id.* at 6.  The Court then denied the motion, but not before warning
Mr. Valdez:

> I guess the point I want to make to you, Mr. Valdez, is when you
> say you wish to reconsider and talk to your family, I understand that
> this case is important to you and your family.  I don't want you to have
> the impression that by reconsidering that you have the final say as to
> whether or not I am going to dismiss these attorneys.
>
> If you can hire new attorneys who are willing to enter this case
> and represent you, you, of course, have the right to do that provided it's
> not going to substantially delay the case; but you don't have the power
> to make the decision to terminate these lawyers and require me to then
> appoint new taxpayer-paid, Court-appointed attorneys to represent you.
> So I just want to make sure you understand that.

*Id.* at 7.  Mr. Valdez indicated that he understood.  *Id.* at 8.

THE COURT:      Has anyone made any promises or assurances to you other than what's contained in the plea agreement in order to get you to plead guilty?

THE DEFENDANT:      No.

THE COURT:      So are you knowingly and voluntarily changing your plea to guilty today because you believe it's in your personal best interest to do so?

THE DEFENDANT:      Yes.

Plea Hrng. Tr. at 8-9.

Next, the Court summarized the statutory maximum penalties Mr. Valdez faced on each count.  *Id.* at 9-10; *see also* Plea Agrmt. ¶ 7.  The Court further noted that the plea agreement was a binding plea agreement and that if the Court accepted it, it would have no choice but to impose the 20-year sentence contained therein.  Plea Hrng. Tr at 11, 13; *see also*. Plea Agrmt. ¶ 3.  Mr. Valdez indicated that he understood.  Plea Hrng. Tr at 13.  The Court explained that before it determined whether to accept the plea agreement the Probation Department would interview Mr. Valdez, prepare a presentence investigation report ("PSR"), and calculate the advisory guideline range under the United States Sentencing Guidelines ("USSG"), which the Court would use to determine Mr. Valdez's ultimate guideline range.  *Id.* at 11-13.  The Court also asked Mr. Valdez if he understood that, as part of the plea agreement, he agreed to waive his right to appeal if the Court accepted the plea agreement and sentenced him accordingly.  *Id.* at 13; *see also* Plea Agrmt. ¶ 13.  Mr. Valdez responded affirmatively.  Plea Hrng. Tr. at 13.

The Court then asked the Government to summarize the elements of the charges against Mr. Valdez and the facts the Government would prove if the case were to go to trial. *Id.* at 14-25; *see also* Plea Agrmt. ¶ 5. At the end of the Government's recitation, the Court stated:

> Mr. Valdez, you heard the elements of the two charges that the Government has brought against you. I again remind you that they'd have to prove each and every one of those elements beyond a reasonable doubt for you to be found guilty of either or both counts.
>
> You also heard the facts that the Government would present at trial and prove at trial if this case were to go to trial. Do you admit the facts as stated by the Government as true?
>
> THE DEFENDANT:          Yes.

*Id.* at 25-26. The Court offered Mr. Valdez the opportunity to ask questions of the Court or discuss anything with his counsel, which Mr. Valdez declined. *Id.* at 26. The Court then asked:

> THE COURT:          How do you now plead to the two charges contained in the Indictment brought against you, Mr. Valdez, guilty or not guilty?
>
> THE DEFENDANT:          Guilty.

*Id.* at 26. The Court concluded:

> THE COURT:          This Court has heard from the Government the evidence it would present if this matter were to go to trial. The Court has questioned the Defendant regarding his understanding of the nature of the proceedings and the consequences of entering a plea of guilty to the charges.
>
> It is, therefore, the finding of this Court in the case of the United States versus Juan Valdez that the Defendant is fully capable and competent to enter an informed plea, that the Defendant is aware of the nature of the charges and the consequences of the plea and that the plea of guilty is a knowing and voluntary plea supported by an independent

basis in fact containing each of the essential elements of the charge. And, therefore, the plea is accepted and the Defendant is now adjudged guilty of those offenses.

*Id.* at 26-27.

Subsequently, at the outset of the sentencing hearing, Mr. Valdez sought a continuance and different counsel. Transcript of December 14, 2018, Sentencing Hearing (ECF No. 242) ("Sent. Hrng. Tr.") at 3. Counsel stated:

> MR. CALABRO:    Your honor, if I may, only because my client's asked me to relay this to the Court, he has asked me to relay to the Court that he does not wish his sentencing to go forward today, and he would like to address the Court. Against my recommendations, he would like to address the Court.
>
> THE COURT:        On the issue of a continuance?
>
> MR. CALABRO:    Yes, and as well as I believe that he wants to get different counsel as well, Judge.
>
> THE COURT:        Well, the issue of a continuance, Mr. Valdez, I won't hear from you because you are represented and you're only allowed to speak through your attorney.
>
> If you're now asking the Court to allow you to fire your attorney and seek new counsel, I'll hear you on that limited issue. Do you want to be heard on that?
>
> THE DEFENDANT:        Yes.
>
> . . .
>
> THE DEFENDANT:        Your honor, the reason why I want to fire my lawyer is because I don't believe that he ever presented me with a defense in this case. . . .

*Id.* at 3-4. In brief, Mr. Valdez alleged that counsel was unresponsive when asked questions, specifically with respect to warrants but more generally regarding discovery. *Id.* at 5; *see also id.* at 6 ("I'm going through this without ever having

13

reviewed my discovery.").  Mr. Valdez also claimed that "[f]rom the very beginning, from the start, I don't [sic] feel comfortable with his representation," *id.* at 5, and that his plea was coerced:

> That date in which I pled guilty, my plea was under duress.  What my lawyer told me was, when I said that I believed that it was too much time if I pled guilty, his answer was, Well, if you don't want to plead guilty, then you have no option but to go to trial and you would be facing a stiffer sentence.  That's what he told me.

*Id.*  The Government objected to Mr. Valdez's request for a "continuance to obtain a new lawyer because that is going to be an enormous waste of time to reach the same result, that the evidence in this case was overwhelming."  *Id.* at 9.  The Court stated:

> THE COURT:        Mr. Valdez, you . . . have two options right now.  You can proceed with Mr. Calabro, and I will tell you that I have had interactions with Mr. Calabro and the other -- many Defendants who have been involved in this case.  I have observed them during court conferences concerning discovery.  I appointed a national expert on discovery coordination, and I saw and observed Mr. Calabro working collaboratively with the others, and I've seen him professionally and well represent you in our court conferences over the last year and a half.
>
> You have the option this morning, because we're going forward with the sentencing, you have the option this morning of proceeding with Mr. Calabro or you privately retained him, you can fire him at any time that you want, but then you'll have -- be forced to proceed pro se.
>
> I strongly do not recommend that you proceed pro se.  It's not in your best interest to proceed pro se.  There are many legal issues that could arise that you're not capable of handling on your own, and I'm informing you that that you would be much better off being -- continue to be represented by an attorney in this case.  It is your choice, but we're going forward with sentencing immediately.
>
> So do you wish to proceed with Mr. Calabro or do you wish to proceed on your own, pro se?

*Id.* at 9-10.  Mr. Valdez ultimately responded:

14

THE DEFENDANT:     Well, I have no other option.  I will follow your recommendation, and I will continue under the representation of Mr. Calabro.

*Id.* at 10.

The Court then continued the sentencing, noting that:

There is a binding plea agreement that everyone, both parties and Mr. Valdez, have signed.  The Court has reviewed the presentence report and all of the materials and has lived with this case for a year plus, two years almost now, and I'm prepared to and do accept the binding plea agreement and will bind myself to it.

*Id.* at 11.  The Court summarized the Guideline range: "So a total offense level of 39, a Criminal History Category IV, comes with a recommended period of imprisonment of 30 years to life."  *Id.* at 13.  Consistent with the plea agreement, the Government and defense counsel recommended a sentence of 240 months, or 20 years.  *See id.* at 18; *see also* Plea Agrmt. ¶¶ 1c., 2a., 3a.  The Court accepted the joint recommendation and sentenced Mr. Valdez to 20 years imprisonment as to each count, to be served concurrently, and an aggregate term of supervision of five years.  Sent. Hrng. Tr. at 22.

After Mr. Valdez made a brief statement, the Court addressed, among other things, the guilty plea:

Let me say a few things.  One, obviously I was at your change of plea where I questioned you under oath and we discussed this plea, and this Court felt very firmly at the time that you knowingly and voluntarily changed your plea and signed that plea agreement after full information and under no duress whatsoever.  I observed you during that hearing, and I concluded that, and I repeat that again today.

*Id.* at 19-20.

It is disingenuous, at best, for Mr. Valdez to claim now that his plea was "induced," Mot. to Vacate at 4, or made "under duress," Sent. Hrng. Tr. at 5.  The evidence before the Court confirms that Mr. Valdez entered his plea knowingly and voluntarily.  He signed the plea agreement after reviewing it with counsel, understood it, and agreed to its terms.  Plea Agrmt. ¶¶ 17-18.  At the outset of the change of plea hearing, Mr. Valdez stated that he was "understanding everything." Plea Hrng. Tr. at 5.  During that hearing, Mr. Valdez stated under oath that he signed the plea agreement voluntarily.  *Id.* at 3.  When questioned, he agreed that he was "knowingly and voluntarily" changing his plea to guilty because he believed it was in his best interest to do so.  *Id.* at 9; *see also id.* at 26-27.  Mr. Valdez has not shown that counsel "induced" him to sigh the plea agreement.

Relatedly, Mr. Valdez claims that "[c]ounsel rendered ineffective assistance for inducing petitioner to accept a plea agreement for a specific amount of time (20 years) where petitioner understood his sentence [would] be less[.]" Mot. to Vacate at 8.  He further alleges that counsel provided ineffective assistance by failing to explain the minimum mandatory sentence he faced by pleading guilty, and by inducing him "to accept the plea indicating it was the only option before facing a life sentence[.]" *Id.* at 4.  Again the record indicates otherwise.

The plea agreement explicitly states that, as a result of the agreement, both defense counsel and the Government would recommend that the Court impose a term of 20 years imprisonment.  Plea Agrmt. ¶¶ 1c., 2a.  In the paragraph entitled "Binding Plea," the agreement states that "[t]he parties understand that if this plea agreement

16

is accepted by the Court, the Court will impose a term of 20 years imprisonment," *id.* ¶ 3a., and that "[t]he Defendant is aware that his sentence is within the sound discretion of the Court," *id.* ¶ 3b.

Paragraph seven of the plea agreement spells out the maximum statutory penalties for the offenses to which Mr. Valdez was agreeing to plead guilty. *Id.* ¶ 7. In addition, ¶ 7 states:

> Defendant understands that if the court were to impose the sentences consecutively he could be sentenced to more than life imprisonment; . . . [and] a term of supervised relief for life[.] . . . Defendant further understands that the statutory penalty for Count 1 carries a minimum mandatory period of imprisonment for 10 years and the Court could not sentence Defendant to less than that length of time in prison but that, if the court accepts this binding plea agreement, he will be sentenced to 20 years of imprisonment.

*Id.* The plea agreement could not have been more explicit that, by signing the plea agreement, Mr. Valdez was agreeing to a sentence of 20 years. [6]

If Mr. Valdez did not understand the plea agreement before the change of plea hearing, during the hearing the Court sought to ensure that he did:

> THE COURT:      If I ask you a question that you do not understand, just ask me to explain it further, and I'd be glad to. And if at any time you want to discuss any matter with your attorneys, you let me know, and I'll give you that opportunity. Okay?
>
> THE DEFENDANT:      Yes.

---

[6] As noted above, Mr. Valdez stated that he had read the plea agreement or had it read to him, discussed it with counsel, understood it, and agreed to its provisions. Plea Agrmt. ¶ 18. Counsel also stated that he had read the plea agreement, received a copy of it, explained it to Mr. Valdez and that, to the best of his knowledge, Mr. Valdez understood the agreement. *Id.* ¶ 17.

Plea Hrng. Tr. at 3. The Court later explained the statutory minimum and maximum penalties Mr. Valdez faced and the maximum prison time he could receive if the Court imposed the penalties for each count consecutively. *Id.* at 9-10. Mr. Valdez responded affirmatively when asked if he understood. *Id.* at 10.

With respect to Mr. Valdez's statement that counsel told him that if he did not want to plead guilty, he had "no option but to go to trial and . . . would be facing a stiffer sentence," Sent. Hrng. Tr. at 5, counsel was correct. Both the plea agreement and the Court during the change of plea hearing explained the statutory maximum penalties for the two offenses to which Mr. Valdez was pleading guilty. Plea Agrmt. ¶ 7; Plea Hrng. Tr. at 9-10. At sentencing, the Court also explained the advisory guideline range Mr. Valdez faced, 30 years to life. Sent. Hrng. Tr. at 13. Telling Mr. Valdez the truth, whether he wanted to hear it or not, does not constitute ineffective assistance. *See Strickland*, 466 U.S. at 689 ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . .").

If Mr. Valdez expected a sentence other than the 20 years to which he agreed when he signed the plea agreement, he should have raised his concerns at that point or spoken up in in Court when given the opportunity to do so. He cannot now blame counsel for his own choices. *See id.* Mr. Valdez has provided no evidence of inducement beyond his own statements, which the Court is not required to accept at face value. *See United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993) ("[T]he court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets."). Thus, the Court rejects Mr.

18

Valdez's claim that counsel were ineffective for "inducing" him to sign a plea agreement for 20 years imprisonment when he thought he would receive a lower sentence.

Next, Mr. Valdez contends that counsel provided ineffective assistance by failing to contest his prior convictions, adjudged as crimes of violence, which caused an erroneous calculation of his base offense level and criminal history in the Presentence Investigation Report (ECF No. 187) ("PSR").   Mot. to Vacate at 5. According to Mr. Valdez, he "addressed to counsel, prior to the sentencing hearing, his criminal history was not accurate.  The presentence report adduced [sic] to prior convictions  not supposed to be used.  Prior Criminal History Points were adjudicated in error." *Id.*

The PSR lists six adult convictions, three of which earned Criminal History Points (three each).  PSR ¶¶ 78-83.  All three involved drug trafficking or possession. *Id.* ¶¶ 81-83.    Nine Criminal History Points resulted in a criminal history category of IV.  *Id.* ¶ 84.  Mr. Valdez does not identify the prior convictions he claims were "not supposed to be used," Mot. to Vacate at 5, or why they were "adjudicated in error," *id.*

With no basis provided for contesting the unidentified prior convictions, the Court cannot find that counsel were ineffective for failing to object to them. *See Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999) ("Obviously, counsel's performance was not deficient if he declined to pursue a futile tactic."); *see also Knight v. Spencer*, 447 F.3d 6, 16 (1st Cir. 2006) ("Knight's counsel could not have rendered ineffective assistance in failing to object to alleged errors of state evidentiary law that were either non-

prejudicial or nonexistent."). Moreover, Mr. Valdez's argument is entirely undeveloped. Therefore, the Court will not address it further. *See Barreto-Barreto v. United States*, 551 F.3d 95, 99 (1st Cir. 2008) (noting that "the petitioners do not develop their argument beyond this assertion," and declining to address it on the merits); *see also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal quotation marks omitted); *id.* (noting "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Mr. Valdez also complains that "[c]ounsel rendered ineffective assistance for not contesting the amount of drugs determined by the probation office. The amount of drugs and guideline determination was not accurate." Mot. to Vacate at 6. Mr. Valdez states: "Counsel failed to contest the amount of drugs after the presentence report was issued. Petitioner addressed this particular matter with counsel prior to the sentencing hearing. Counsel opted to ignore[] petitioner's request and the sentence was imposed without counsel objection." *Id.*

According to Mr. Valdez, his base offense level of 34, PSR ¶ 54, was calculated because he "was held accountable for 16,664 kilograms of marijuana not mention[ed] in the indictment neither [sic] in the plea agreement." Reply at 7. However, as explained by the PSR, in determining a single offense level for multiple controlled substances, each substance is converted to its marijuana equivalent weight. PSR

¶ 53 (citing USSG § 2D1.1); *see also United States v. Mills*, 710 F.3d 5, 9 (1st Cir. 2013) ("The sentencing guidelines provide a formula for converting drugs into equivalent units of marijuana for sentencing purposes[.]"). After conversion, the total was 16,681.24 kilograms. PSR ¶ 53; Sent. Hrng. Tr. at 12 (explaining the calculation of the base offense level); *see also United States v. Correa-Alicea*, 585 F.3d 484, 488 (1st Cir. 2009) ("Under the sentencing guidelines, the base offense level largely depends upon the total drug quantities involved in the offense.").

Moreover, under the plea agreement, Mr. Valdez agreed to plead guilty to conspiracy to distribute a kilogram or more of heroin, cocaine, cocaine base, and fentanyl. Plea Agrmt. ¶ 1a. The Government and Mr. Valdez stipulated and agreed that:

> In the course of this investigation, controlled substances totaling more than 2 kilograms of heroin (some of which contained fentanyl), over 1.5 kilograms of cocaine, as well as hundreds of grams of cocaine base and fentanyl, were purchased and seized; all of which was attributable to the conspiracy and the Valdez [drug trafficking organization] and all of which was reasonably foreseeable to Defendant.

*Id.* ¶ 5; *see also id.* "[T]he government could have proven that the conspiracy involved more than a kilogram of heroin beyond a reasonable doubt."); Plea Hrng. Tr. at 24. Both parties also stipulated that "[e]xcept as expressly provided in the preceding paragraphs, there is no agreement as to which Offense Level and Criminal History Category applies in this case." Plea Agrmt. ¶ 6. The Court also explained to Mr. Valdez at the change of plea hearing that, before sentencing, the Probation Department would prepare a PSR that would give the Court "information about [his] background, [his] criminal history and other information that's helpful to determine

21

whether the Court will accept the plea agreement and what an appropriate sentence is for [his] case."  Plea Hrng. Tr. at 12.  Thus, the possibility that the Court would reject the plea agreement and sentence Mr. Valdez under the USSG remained open (although it did not do so).

Any objection to the drug quantity calculation may have been relevant had Mr. Valdez been sentenced under the USSG.[7]  He was not.  Rather, he was sentenced under a binding plea agreement in which both defense counsel and the Government agreed to recommend a 20-year sentence and which the Court accepted.  Plea Agrmt. ¶¶ 1c., 2a., 3a.; *see also* Sent. Hrng. Tr. at 11.  Mr. Valdez agreed to this sentence. *See* Plea Agrmt. ¶ 18.  Thus, any objection counsel made to the drug quantity would have been futile.  And counsel need not pursue futile tactics or make futile objections. *See Vieux*, 184 F.at 64; *see also Knight*, 447 F.3d at 16.

Lastly, as to Mr. Valdez's allegation that counsel failed to dispute his role in the conspiracy, that is, that he was neither a leader nor an organizer, Mot. to Vacate at 4, the Court again looks to the record.  In the plea agreement, the Government and Mr. Valdez stipulated and agreed that Mr. Valdez, "along with his brothers Claudio Valdez and Hector Valdez, were leaders and organizers of a drug trafficking organization hereinafter referred to as 'The Valdez DTO.'"  Plea Agrmt. ¶ 5; *see also* Plea Hrng. Tr. at 21 ("As between the three brothers, Juan Valdez in the recorded conversations appeared to exert the greatest influence in this case.").

---

[7] As discussed, Mr. Valdez's guideline range was 30 years to life.  Sent. Hrng. Tr. at 13.

Moreover, contrary to Mr. Valdez's assertion, during the sentencing hearing counsel did argue against the four-point increase in Mr. Valdez's offense level:

> MR. CALABRO:   Your honor, the only objection that my client asks that I make, although it is contained in the plea agreement, Judge, he does object to paragraph 58 [of the PSR]. He still contends that he was not an organizer or a leader of this organization and he should not get those four points.

Sent. Hrng. Tr. at 13-14.[8]  The Court rejected counsel's argument:

> THE COURT:   Great. Thank you, Mr. Calabro. The Court has considered that objection to the paragraph 58 adjustment under 3B1.1(a). And after having reviewed all the evidence, including the many wiretaps that were involved in this case, the Court finds that the finding of an organizer or leader of a criminal activity that involves five or more participants or was otherwise extensive has a strong basis in fact, and the Court believes that the four-point addition is appropriate. . . .

*Id.* at 14.

In any event, Mr. Valdez's argument regarding the four-point adjustment is moot. Mr. Valdez was sentenced pursuant to the binding plea agreement, not under the USSG. Plea Agrmt. ¶¶ 1c., 2a., 3a.; *see also* Sent. Hrng. Tr. at 11, 22. Therefore, Mr. Valdez has failed to demonstrate that counsel were ineffective for failing to contest his role as an organizer or leader of the conspiracy.

Even if Mr. Valdez had shown that counsel's performance fell below "an objective standard of reasonableness," *Strickland*, 466 U.S. at 688—and he has not— he cannot demonstrate prejudice with respect to any of his claims, *see id.* at 687

---

[8]  Paragraph 58 of the PSR states that: "The defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; therefore, four levels are added." PSR ¶ 58 (citing USSG § 3B1.1(a)).

("Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."); *Reyes-Vejerano*, 117 F. Supp. 2d at 106 ( noting petitioner's "burden of proving both prongs of this test, and the burden is a heavy one").   Mr. Valdez faced statutory penalties of ten years to life imprisonment, with a period of supervised release of five years to life, on Count 1.   Plea Agrmt. ¶ 7; Plea Hrng. Tr. at 9; PSR at 1,  ¶¶ 121,  124.     For Count 2, Mr. Valdez faced a maximum of 20 years imprisonment and up to three years supervised release.   Plea Agrmt. ¶ 7; Plea Hrng. Tr. at 9-10; PSR at 1, ¶¶ 121, 124.   During the change of plea hearing, the Court stated:

> THE COURT:     Now, if the Court were to impose the maximum sentence as to each of the two counts and if the Court were to impose the sentences to run consecutively, that means one after the other, then the maximum term of imprisonment is a lifetime of imprisonment, . . . [and] a term of supervised release of life . . . .

> Do you understand that these are the maximum penalties that the Court could impose at the time of sentencing in this case?

> THE DEFENDANT:     Yes.

Plea Hrng. Tr. at 10.

Mr. Valdez's guideline range under the USSG was similarly bleak.   His total offense level was 39, Sent. Hrng. Tr. at 13; PSR ¶ 76, and his criminal history category was IV, Sent. Hrng. Tr. at 13; PSR ¶ 84, which yielded a guideline range of 360 months (30 years) to life imprisonment, *see* Sent. Hrng. Tr. at 13; PSR ¶ 122. The binding plea agreement, on the other hand, called for a recommended sentence of 20 years imprisonment.   Plea Agrmt. ¶¶ 1c., 2a., 3a.; *see also* Plea Hrng. Tr. at 13.

The benefit of the Plea Agreement to Mr. Valdez is obvious, as the Court noted during the sentencing hearing:

> The fact that your attorneys were able to negotiate a plea that is significantly lower than 30 years to life speaks both to their professionalism and advocacy on your behalf and to the Government's understanding of a person who's 50 years old and what is sufficient but not more than necessary in order to effectuate all of the reasons for sentencing.

Sent. Hrng. Tr. at 20.  In addition, the Court recognized the strength of the evidence against Mr. Valdez.  *See id.* ("[I]n my seven-and-a-half years on the bench I have never seen such a strong case of guilt against anyone than I saw against you and other members of this conspiracy.").  Accordingly, Mr. Valdez would be hard pressed to demonstrate prejudice under *Strickland*.

Moreover, Mr. Valdez has not demonstrated that the outcome of the plea process would have been different had he received different advice from counsel.  *See Lafler*, 566 U.S. at 163  ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.") ; *see also Frye*, 566 U.S. at 148 ("In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" (quoting *Hill Lockhart*, 474 U.S. at 59)).  Although Mr. Valdez states that had he known he was facing a 20-year sentence with no other option he would not have signed the plea agreement, Mot. to Vacate at 8, he provides no support for this claim.  At best, Mr. Valdez was facing 30 years imprisonment under the USSG if convicted.  Sent. Hrng.

Tr. at 15.  At worst, Mr. Valdez faced a life sentence.  Plea Hrng. Tr. at 9; Sent. Hrng. Tr. at 13.

Viewing Mr. Valdez's situation objectively, *see Hill v. Lockhart*, 474 U.S. at 59-60 ("these predictions of the outcome at a possible trial, where necessary, should be made objectively . . ." (citing *Strickland*, 466 U.S. at 695)), the Court concludes that it is highly unlikely that Mr. Valdez would have rejected the plea agreement. Therefore, Mr. Valdez has not—and cannot—meet *Strickland's* prejudice prong.  *See Frye*, 566 U.S. at 148.

In short, in addition to failing to demonstrate that counsel's performance was deficient or ineffective, Mr. Valdez has failed to show prejudice.  Accordingly, he has not satisfied *Strickland's* requirements, *see Strickland*, 466 U.S. at 687; *Reyes-Vejerano*, 117 F. Supp. 3d at 106, and his motion fails.

## CONCLUSION

Mr. Valdez's Motion lacks merit.  The Court therefore DENIES Juan Valdez's Motion to Vacate his sentence (ECF No. 279) under 28 U.S.C. § 2255.

## RULING ON CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court finds that this case is <u>not</u> appropriate for issuing a certificate of appealability, because Mr. Valdez has failed to make a substantial showing of the denial of a constitutional right on any claim, as required by 28 U.S.C. § 2253(c)(2).

26

Mr. Valdez is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal here.  *See* § 2255 Rule 11(a).

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief United States District Judge
Date:  September 19, 2021